THE STATE, EX REL. CRABBE, ATTY. GENL., *v.* CITY
OF COLUMBUS ET AL.

*Municipal corporations—Gasoline excise tax funds—Purchase
of sand dryer for municipal asphalt plant authorized—
Section 5537, General Code—Expenditure of funds for
highway maintenance and repair.*

1. City *held* empowered to expend funds allotted under gaso-
line excise tax law to buy sand dryer to be used in city
asphalt plant, operated exclusively to prepare materials
for maintaining and repairing streets, since city officials
have latitude of discretion in use of such funds so long
as money is spent to maintain and repair highways, in
view of Section 5537, General Code.
2. Common observation teaches that more scientific, efficient,
and economic method of caring for streets than having
men here and there with kettles of asphalt for repair
work might be adopted in large city.

(Decided May 28, 1926.)

ERROR: Court of Appeals for Franklin county.

Mr. *C. C. Crabbe,* attorney general, and Mr. *Wil-
bur E. Benoy,* for plaintiff in error.
Mr. *Charles A. Leach,* city attorney, Mr. *John
L. Davies,* and Mr. *M. B. Gessaman,* for defendant
in error.

KUNKLE, J.   The original action was brought by the state to enjoin the city of Columbus and its officers from expending funds, apportioned to it under the gasoline excise tax law, for the purchase of a machine called a sand dryer, to be placed in the asphalt plant owned by the city. The city answered, admitting that it had purchased a sand dryer at a cost of $5,975, to be paid for out of the funds apportioned to the city under the gasoline excise tax law, and that the said dryer was to be installed in an asphalt plant used and owned by the city. It is also averred in the answer that "the city of Columbus, now and for several years last past, has owned and operated an asphalt repair plant for the exclusive purpose of preparing the materials used for maintaining and repairing the asphalt streets of the city of Columbus and that said sand dryer, with necessary equipment contracted for as set forth in said petition, is an essential and necessary part of said asphalt repair plant; that said asphalt repair plant is an essential and necessary equipment for the preparation of materials used for maintaining and repairing said asphalt streets, without which equipment said city cannot maintain and repair said asphalt streets; * * * that ever since its acquisition by the city of Columbus the entire output of said asphalt repair plant has been used exclusively for maintenance and repair work; and that in the year 1926 and all future years said asphalt repair plant will be used exclusively for the same purpose."

The state demurred to the answer of the city and the demurrer was overruled by the trial court.

The state not desiring to reply, final judgment was rendered for the city.

The solution of the question presented depends largely, if not wholly, upon a construction of the gasoline excise tax law. Various provisions of the gasoline tax law bear upon the question presented. As a general proposition it may be stated that the entire revenue from the gasoline tax law is to be applied solely and exclusively to the maintenance and repair of the highways of the state, including those of cities and other subdivisions. The gross amount of taxes after payment of specific expenses is to be apportioned. The following paragraph of Section 5537, General Code, provides for apportionment to municipal corporations:

"Thirty per cent. of such gasoline tax excise fund shall be paid on vouchers and warrants drawn by the auditor of state to the municipal corporations within the state in proportion to the total number of motor vehicles registered within the municipalities of Ohio during the preceding calendar year from each such municipal corporation as shown by the official records of the secretary of state, and shall be used by such municipal corporations for the sole purpose of maintaining and repairing the public streets and roads within such corporation."

It is clear from the provisions of the entire gasoline excise tax act that the General Assembly intended to confine the expenditures from said fund exclusively and solely to highway maintenance and repair. In the apportionment made to the cities and municipalities the limitation in the use of the fund was again repeated. It will be

observed, however, that no limitation was placed upon the officials of the city, other than that the fund be used exclusively for highway maintenance and repairs. It would necessarily follow that a reasonable discretion must be allowed the officials of the cities in determining the method or manner of making these repairs. In a large city like Columbus there are many miles of streets bearing constant and heavy traffic to be maintained and kept in repair. The old method of putting a man with a kettle or container of asphalt to be used for patchwork here and there might or might not be the most economical and efficient way of keeping up the very extensive program of street repair in the city of Columbus. We also know from general and common observation that a more elaborate system and a more scientific method might be adopted with greater economy and efficiency in a large city like Columbus. The state did not reserve to itself the right to dictate to the cities as to the method. Consequently we must leave open to the city officials a latitude of discretion. It will be noted that the averments of the answer of the city as to this plant are clear as to the exclusive use of the plant for maintenance and repair purposes. These averments are admitted by the demurrer. There is nothing in the record which would tend in any degree to impugn the motives or good faith of the city in expending these funds for the purposes stated. The state contends that if any portion of the funds are allowed to be taken for a purpose of this kind it will tend to break down the limitations imposed by the gasoline excise tax act, and give a pretext

to cities to divert the revenues of this fund to illegal and unwarranted uses. It is sufficient in this respect to say that a reasonable latitude must be allowed the city officials under this act. As long as no diversion or misappropriation of the funds is shown, and where it appears as an admitted fact that the uses contemplated are strictly for maintenance and repair purposes, we are of opinion that the courts are not called upon to interfere.

The answer of the city showing that the purchase of the sand dryer is necessary to the equipment of the asphalt repair plant, and showing further that such asphalt plant is used exclusively for maintenance and repair work, we are of opinion that the city may in its discretion use the funds for the purpose of equipping said asphalt plant, and that the court has no authority to interfere therewith in the absence of some showing that the plant is to be used for some other purpose than that stated.

We think the demurrer to the answer of the city was properly overruled.

*Judgment affirmed.*

ALLREAD and FERNEDING, JJ., concur.